JUDGE FRANK MONTALVO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| BRANDON CALLIER,<br><br>Plaintiff,<br><br>v.<br><br>NIVAN TECH, LLC a New Jersey limited liability Company and GNANAVEL MADASAMY<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**EP22CV0027**

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.   The Plaintiff is BRANDON CALLIER ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.   Defendant NIVAN TECH, LLC ("Nivan") is limited liability company organized and existing under the laws of New Jersey and can be served via registered agent Gnanavel Madasamy at 8207 Tamarron Drive, Plainsboro, New Jersey 08536.

3.   Defendant GNANAVEL MADASAMY ("Madasamy") is a natural person, resident of New Jersey, Founder and Managing Officer of Nivan Tech, LLC and can be served at 8207 Tamarron Drive, Plainsboro, New Jersey 08536.

### JURISDICTION AND VENUE

4.   Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

5. Personal Jurisdiction. This Court has general personal jurisdiction over the defendants because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

6. Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

7. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named Defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

8. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic

2

telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

14.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

15.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16.     The FCC requires "prior express written consent" for all autodialed or prerecorded

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

17. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

20. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal

4

participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

21.  The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

22.  The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees. Tx. Bus. Com Code 302.302(a), 302.302(d).

23.  Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302.]" Tex. Bus. & Com. Code § 302.303.

24.  The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

### FACTUAL ALLEGATIONS

25.  Plaintiff has been on the National Do-Not-Call Registry since December 2007.

26.  Defendant Madasamy formed Niven Tech, LLC in September 2014 as the sole officer and registered agent.

5

27. Defendant Niven operates as a front for the illegal "student loan forgiveness" schemes conducted by Madasamy and his cohorts.

28. On January 7, 2022, Plaintiff received a phone call from the Defendants advertising student loan forgiveness. The telemarketer did not properly identify himself and portrayed himself an employee and/or agent of the United States Government.

29. Defendants illegally accessed reset Plaintiff's password at http://studentaid.gov and accessed Plaintiff's student aid account without his knowledge or permission.

30. Plaintiff pretended to be interested in the student loan forgiveness services of the Defendants in order to find out who was robocalling Plaintiff.

31. On January 7, 2022, Defendants sent Plaintiff a contract that did not contain the Defendants company name, company address, a contract person's name, or a working traceable phone number.

32. Plaintiff advised the Defendants that he would not sign a contract that did not contain the company information and to cease calling Plaintiff.

33. On January 7, 2022, Defendants sent Plaintiff a text message stating "We are not any third party company Brandon. We are student aid support team and we work under the federal government" implying they are affiliated directly with, or work on behalf of, the federal government.

34. Defendants continued to contact Plaintiff despite being told to stop. Plaintiff asked for a company address during one of these contacts. Defendants responded to this request by sending Plaintiff a text message stating "Our address is P.O.Box 419027, Rancho Cordova, CA 95741-9027. But due to the pandemic we are working from home."

35. Plaintiff researched the address in ¶ 34 given by the Defendants. This address belongs to

the California Student Aid Commission.

36. Defendants also attempted to impersonate the California state government.

37. Defendants continued to call and harass Plaintiff about signing the contract. Plaintiff realized the only way to find out who was committing fraud was to allow the Defendants to charge his credit card.

38. On January 10, 2022, Defendants' agent "Justin" called Plaintiff and the following conversation occurred:

> Justin: Hello Brandon, this is Justin. You said you'd be giving me a call.
> Plaintiff: I got busy what's going on?
> Justin: Yeah, Brandon, like we have all the documents, like you're the one who has to sign the documents.
> Plaintiff: Yeah, that's cause I can't figure out who I'm dealing with and I don't want to sign paperwork without knowing who I'm dealing with.
> Justin: Ok, I told you Brandon that we are giving you a call from the Federal Government and we work with the student aid.

39. On January 11, 2022, Plaintiff signed the contract in order to find out who was impersonating federal officials, state officials, and attempting to commit the fraud.

40. The Defendants charged Plaintiff's credit card. and the Defendants charged his credit card. Plaintiff checked his credit card statement and saw the $450 charge was from Defendant Nivan Tech, LLC.

41. Plaintiff searched Nivan Tech, LLC online and discovered it was owned by Defendant Madasamy.

42. Defendant Madasamy instructed his employees, agents and co-conspirators to impersonate federal officials, send contracts with no contact information in order to commit fraud anonymously, and collect payment upfront in advance of services rendered in violation of the Telemarketing Sales Rules (T.S.R.). 16 C.F.R. § 310.4(a)(5)(i).

43. Defendant Nivan masquerades as a technology software company but is actually a front

7

for an illegal "student loan forgiveness" company that commits fraud on a grand scale.

44. On January 12, 2022, Plaintiff told Defendants to cancel the contract and to never call Plaintiff again. The Defendants immediately called Plaintiff back. Plaintiff told the Defendants' representative "Didn't I just tell you to cancel my contract and to never call me again?"

45. Plaintiff sent "Do not call" requests via email, voice, and text. Yet the Defendants still persisted with contacting Plaintiff.

46. The Plaintiff received at least 15 calls over seven (7) days to his cell phone ending in 4604 without his prior express consent and not related to an emergency purpose, selling "Student Loan Forgiveness" products and services of Defendant Nivan.

47. Plaintiff did not want or need services from the Defendants, but pretended to be interested for the sole purpose of identifying who was impersonating federal officials and attempting to commit fraud.

48. Defendants lead Plaintiff to believe payments would be applied to his student loan balance and applied towards services of the Defendants.

49. The Defendants' representative made repeated calls to Plaintiff asking Plaintiff to sign the contract without providing Plaintiff with enough time to read the contract or research the company or the claims made by the Defendants' representative. The representative kept telling Plaintiff how "urgent" it was to sign the documents in an attempt to get Plaintiff to sign the documents without reading them.

50. Table below displays calls made to Plaintiff by Defendants:

| Date | Time | Caller ID |
|---|---|---|
| 1/7/2022 | 5:21 PM | 760-367-8864 |
| 1/7/2022 | 5:23 PM | 760-367-8864 |
| 1/7/2022 | 5:35 PM | 760-367-8864 |
| 1/7/2022 | 5:38 PM | 760-367-8864 |
| 1/7/2022 | 5:41 PM | 760-367-8864 |
| 1/7/2022 | 5:48 PM | 760-367-8864 |
| 1/7/2022 | 6:15 PM | 760-367-8864 |
| 1/7/2022 | 6:24 PM | 760-367-8864 |
| 1/7/2022 | 6:34 PM | 760-367-8864 |
| 1/7/2022 | 6:37 PM | 760-367-8864 |
| 1/10/2022 | 1:49 PM | 760-367-8864 |
| 1/10/2022 | 3:58 PM | 760-367-8864 |
| 1/10/2022 | 4:19 PM | 760-367-8864 |
| 1/13/2022 | 1:23 PM | 760-367-8864 |
| 1/13/2022 | 1:24 PM | 760-367-8864 |

51. Defendants collectively knowingly and willfully mislead Plaintiff with respect to the forgiveness of his student loans.

52. Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

53. Defendants initiated numerous unsolicited telephone calls, made unlawful telemarketing sales pitches regarding student loan forgiveness, misrepresented themselves as federal employees and/or agents, unlawfully collected payments upfront, unlawfully collected Plaintiff personal information, such as social security number, email address, address, credit card issuer, bank account number, bank account routing number, and home address.

54. Defendant Madasamy participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of his employees, agents, and co-

9

conspirators to engage in the false and misleading sales practices and unlawful robocalling.

55. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy

56. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

57. No emergency necessitated the calls.

58. None of the Defendants ever sent Plaintiff any do-not-call policy.

59. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Plaintiff the unsolicited calls.

60. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

### DEFENDANT MADASAMY IS PERSONALLY LIABLE

61. "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985).

62. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the

'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

63. Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

64. The Same Court held that corporate officers were also personally liable for DTPA violations

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct.....For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a

11

corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

65. At all times material to the Complaint, acting alone or in concert with others, Defendant Madasamy has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Nivan, including the acts or practices set forth in this Complaint.

66. Defendant Madasamy is the principal director and operator of Defendants Nivan and controls the day-to-day operations of Nivan and directed his employees, agents, salespersons, and solicitors to make TCPA violating phone calls and to solicit "student loan forgiveness" and "student loan consolidation" services and to lie and misrepresent themselves as federal officials.

67. Defendant Madasamy approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for their financial benefit.

68. Defendants Madasamy and Nivan collect their fees for the "student loan forgiveness" and "student loan consolidation" through a credit card payments and authorized checks processed prior to providing any services. This is an unlawful payment processing scheme that collects payments in advance of services rendered in violation of the TSR. 16 C.F.R. § 310.2(cc) and 16 C.F.R. § 310.4(a)(5)(i).

69. Defendant Madasamy knew the collection of fees before rendering service illegal.

70. Defendants Madasamy and Nivan knowingly and willfully ignore the law. They solicit the services of student loan forgiveness and collect money upfront before any services are

performed or any debts are forgiven. The violations are the direct result of the instructions Defendant Madasamy has given to his agents, employees, solicitors, salespersons, and others that carry out his schemes.

71. Defendant Madasamy is not merely a bystander. He is the mastermind that schemed, planned, directed, initiated and controlled the illegal and fraudulent behavior.

72. Defendant Madasamy is well aware the conduct violated the TCPA and Tex. DPTA and refused to alter the behavior. Defendant Madasamy is the sole director of Nivan and the only persons with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, he has taken no steps to stop the behavior because the behavior benefits him financially. Defendant Madasamy breaks the law with his eyes and pocketbooks wide open.

73. Defendants Madasamy and Niven should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because he actually committed the conduct that violated the TCPA and Tex. DTPA, and/or he actively oversaw and directed this conduct.

74. Defendant Madasamy should be held liable because to do otherwise would simply allow the individual to simply dissolve Niven and set up a new corporation, and repeat his conduct. This would result in both the TCPA and DTPA being unenforceable.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

75. Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

76. Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

13

77. Defendants' calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

78. Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

### The Plaintiff's cell phone is a residential number

79. The calls were to the Plaintiff's cellular phone 4604 which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

80. The actions of the Defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the Defendant violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

81. The calls by the Defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

### Violations of the Texas Business and Commerce Code § 302.101

82. The actions of the Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and

14

bond on file with the Texas Secretary of State.

83. Under the Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101

## I.     FIRST CLAIM FOR RELIEF

**(Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(c))**

**(Against All Defendants)**

1. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the national do-not-call registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

3. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

## II.    SECOND CLAIM FOR RELIEF

**(Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))**

**(Against All Defendants)**

1. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.  The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a.  a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

    b.  training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

    c.  in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

3.  Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

4.  Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

5.  Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

## III. THIRD CLAIM FOR RELIEF:

### Violations of The Texas Business and Commerce Code 305.053

1. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone numbers without his prior express written consent in violation of 47 USC 227 et seq. The Defendant violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

3. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

4. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c).**

## IV. FOURTH CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 302.101)

1. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

3. Mr. Callier is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302.**

4. Mr. Callier is entitled to an award for all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorney's fees.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1500 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for 15 calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G. An award to Mr. Callier of damages, as allowed by law under the TCPA;

H. An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity

I.  Such further relief as the Court deems necessary, just, and proper.

January 18, 2022                                     Respectfully submitted,

*/s/ Brandon Callier*

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604